# DEPARTMENT OF PUBLIC WORKS *v.* ECAP CONSTRUCTION COMPANY ET AL.
## (SC 16036)

Borden, Norcott, Katz, Palmer and McDonald, Js.

Argued May 26—officially released September 7, 1999

*Laurann Asklof*, assistant attorney general, with whom were *Lawrence Russ*, assistant attorney general, and, on the brief, was *Richard Blumenthal*, attorney general, for the appellant (plaintiff).

*Vincent M. Simko*, with whom were *Daniel H. Schneider* and *Mary H. Trainer*, legal intern, for the appellee (named defendant).

*Opinion*

PALMER, J. The dispositive issue raised by this appeal is whether, under General Statutes § 4-61,[1] a

---

[1] General Statutes § 4-61 provides in relevant part: "Actions against the state on highway and public works contracts. Arbitration. (a) Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state may, in the event of any disputed claims under such contract or claims arising out of the awarding of a contract by the Commissioner of Public Works, bring an action against the state to the superior court for the judicial district of Hartford for the purpose of having such claims determined, provided notice of each such claim under such contract and the factual bases for each such claim shall have been given in writing to the agency head of the department administering the contract . . . .

"(b) As an alternative to the procedure provided in subsection (a) of this section, any such person, firm or corporation having a claim under said subsection (a) may submit a demand for arbitration of such claim or claims for determination under (1) the rules of any dispute resolution entity, approved by such person, firm or corporation and the agency head and (2) the provisions of subsections (b) to (e), inclusive, of this section, except that if the parties cannot agree upon a dispute resolution entity, the rules of the American Arbitration Association and the provisions of said subsections shall apply. The provisions of this subsection shall not apply to claims under a contract unless notice of each such claim and the factual bases of each claim has been given in writing to the agency head of the department administering the contract . . . ."

Section 4-61 recently was amended to reflect the separation of the former judicial district of Hartford-New Britain into two distinct judicial districts. See Public Acts 1988, No. 88-230, § 1 (made effective September 1, 1998 by Public Acts 1995, No. 95-220, § 5). This amendment has no bearing on this appeal.

contractor who claims that the state has breached a public works contract may compel the state to arbitrate a dispute over the state's alleged agreement to settle the contractor's underlying breach of contract claim. We conclude that the state may not be compelled to submit to arbitration in such circumstances and, accordingly, reverse the judgment of the trial court rejecting the state's application for a permanent injunction prohibiting the arbitration of the alleged settlement agreement.

The following facts and procedural history are relevant to this appeal. On March 11, 1994, the named defendant, ECAP Construction Company (ECAP),[2] entered into a contract with the plaintiff, the state department of public works (department), to perform concrete work in connection with the construction of a law library at the University of Connecticut School of Law in Hartford. The contract required ECAP to provide all materials, labor, equipment and services necessary to construct the concrete portions of the building, including the foundation walls and floor slabs. During the construction of the library, a dispute arose between the department and ECAP regarding changes in work orders and schedules, delays in the work caused by the department and its general contractor, and the unpaid balance of the contract price. In late 1995, ECAP submitted an informal notice of claim to the department setting forth its alleged damages.

From December, 1995, until April, 1996, department officials and ECAP representatives met several times to discuss the dispute. ECAP alleges that, at one of these meetings, Richard Piotrowski, the department's bureau chief of facilities design and construction, made a firm offer to settle the dispute for $425,000. ECAP also alleges that it subsequently accepted that offer.

---

[2] The American Arbitration Association also is a defendant in this case.

According to the department, however, Piotrowski's settlement offer was only a tentative one, subject to approval by the department's commissioner and the formal approval process required under General Statutes § 3-7 (c).[3] Such approval was never obtained, and the department notified ECAP that, in its view, there was no settlement of the dispute.

On February 18, 1997, ECAP filed a demand for arbitration before the American Arbitration Association (arbitration association), the other defendant in this case, under § 4-61, seeking $1,870,169.83 in damages for extra work and delays under the construction contract. Although the department contested ECAP's claim, the department did not dispute the arbitrability of the claim.

On October 29, 1997, ECAP filed an amended demand for arbitration, adding allegations that the department had: (1) breached the purported agreement to settle the dispute under the contract; and (2) acted in bad faith and "in willful disregard of ECAP's rights under the terms of the [settlement] [a]greement and with reckless indifference and wanton and intentional violation of those rights . . . ." The amended demand for arbitration sought, inter alia, an additional $425,000 in damages.

The state then filed this action seeking, inter alia, a permanent injunction against ECAP and the arbitration association from proceeding with the amended demand for arbitration.[4] At the hearing on the state's action, the state asserted that the arbitration association lacked

---

[3] General Statutes § 3-7 (c) provides in relevant part: "Upon the recommendation of the Attorney General, the Governor may authorize the compromise of any disputed claim by or against the state or any department or agency thereof, and shall certify to the proper officer or department or agency of the state the amount to be received or paid under such compromise. . . ."

[4] The state also sought a "declaratory judgment that ECAP is precluded from asserting before the [arbitration association] its claims as stated in the [a]mended [d]emand."

subject matter jurisdiction over ECAP's amended demand. Specifically, the state maintained that ECAP's amended demand did not fall within the limited sovereign immunity waiver of § 4-61 because the parties' disagreement over the purported settlement did not constitute a disputed claim arising "under" the contract within the meaning of the statute.

The trial court denied the state's application for injunctive relief. The court concluded that, because ECAP's original disputed claims were subject to arbitration, its amended demand concerning a dispute over the alleged agreement to settle those claims also was arbitrable. In particular, the trial court rejected the state's claim that, for purposes of § 4-61, a distinction must be made between a disputed claim arising "under" a public works contract, and a disputed claim, such as ECAP's claim, that is "related to," "derived from" or "based upon" the underlying contract.[5] Accordingly, the trial court rendered judgment for the defendants.

The state appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to what is now Practice Book § 65-1, and General Statutes § 51-199 (c).

On appeal, the state argues that the trial court improperly concluded that § 4-61 authorizes arbitration of ECAP's claims concerning the department's alleged breach of the settlement agreement. The state maintains that § 4-61 provides for a waiver of the state's sovereign immunity only in narrowly defined circumstances and, furthermore, that ECAP has failed to establish that its amended demand for arbitration falls within the limited

---

[5] The trial court also determined that ECAP's claim that the department acted in bad faith was arbitrable because § 4-61 permits actions against the state for any disputed claim, including those that sound in tort. In light of our conclusion that ECAP's amended claim against the department is barred by the doctrine of sovereign immunity, we do not address this issue.

scope of that waiver. According to the state, the department's alleged breach of the settlement agreement did not constitute a "disputed [claim] under [a public works] contract" within the meaning of § 4-61. The state claims, therefore, that the arbitration association lacks subject matter jurisdiction to arbitrate these claims. We agree with the state.

Whether the department's alleged breach of the settlement agreement is subject to arbitration under § 4-61 is a question of statutory interpretation. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Babes* v. *Bennett*, 247 Conn. 256, 261–62, 721 A.2d 511 (1998).

"Our analysis is more specifically illuminated by the well settled principle that when the state waives sovereign immunity by statute a party attempting to sue under the legislative exception must come clearly within its provisions, because [s]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed . . . . Where there is any doubt about [the] meaning or intent [of a statute in derogation of sovereign immunity, it is] given the effect which makes the least rather than the most change in sovereign immunity. . . . The state's sovereign right not to be sued may be waived by the legislature, provided clear

intention to that effect is disclosed by the use of express terms or by force of a necessary implication." (Citations omitted; internal quotation marks omitted.) Id., 262. Thus, before bringing suit under a statutory waiver of sovereign immunity, "[a] plaintiff must prove . . . that there is a precise fit between the narrowly drawn reach of the relevant statute . . . and the contractual language upon which the plaintiff depends." (Internal quotation marks omitted.) *DeFonce Construction Corp.* v. *State*, 198 Conn. 185, 188, 501 A.2d 745 (1985).

Section 4-61 (a) provides that a party who has contracted with the state for certain public works contracts may bring an action against the state in the event of "disputed claims *under* such contract . . . ." (Emphasis added.) The legislature's use of the word "under," as opposed to a broader term such as "related to," "connected with" or "derived from," indicates an intent to authorize only those disputed claims against the state that fall directly under the contract itself. To permit an action against the state for a claim that is related to or connected with a public works contract would expand the limited waiver of immunity inherent in § 4-61 beyond the statute's plain language. In light of our long-standing policy favoring a narrow construction of statutory provisions in derogation of the state's immunity from suit, we will not extend the reach of § 4-61 absent a clear indication of such an intent by the legislature. We are not persuaded that the legislature intended such an expansion of § 4-61.

ECAP contends that prohibiting the arbitration of a purported agreement to settle an otherwise arbitrable dispute contravenes a central purpose of § 4-61, namely, to reduce the cost of state public works contracts by permitting contractors to sue the state for any disputes arising under the contract. See, e.g., 7 S. Proc., Pt. 3, 1957 Sess., p. 1636, remarks of Senator John H. Filer (permitting suit against state will result in better bids

on state projects); Conn. Joint Standing Committee Hearings, General Law, Pt. 2, 1957 Sess., p. 436, remarks of Representative Merrill S. Dreyfus (bill will save state money in long run). By permitting a contractor to seek recourse against the state for claims arising under a public works contract, the legislature clearly intended to provide the contractor with significant protection against a breach of that contract by the state. The fact that contractors have been granted such protection under § 4-61 would suggest that they are more likely to bid on state projects, which, in turn, would make it more likely that the cost to the state of such projects will be reduced. There is no reason to believe, however, that permitting a contractor to seek recourse against the state for the state's alleged breach of an agreement to settle a dispute under the contract would have any bearing on the willingness of contractors to bid on state public works projects. It is not surprising, therefore, that there is nothing in the legislative history to suggest that, in order to effectuate the statute's purpose, the legislature also intended to permit a claim against the state that, like the claim in this case, is related to, but does not arise under, the public works contract. Thus, we reject ECAP's claim that the legislative history and purpose of § 4-61 support its interpretation of the statute.

ECAP also asserts that, because efforts to settle disputed claims between parties are favored, we may presume that the legislature intended that a dispute relating to a purported settlement agreement of a claim brought under § 4-61 would, itself, be deemed arbitrable. In further support of its argument, ECAP points to subsection (f) of § 4-61, which provides that claims brought by a contractor against the state may be submitted for mediation, a method of resolving disputes short of full blown litigation. Although we agree with ECAP that both § 4-61 (f) and broad public policy considerations

favor pretrial resolution of disputes between contracting parties, including the state; see, e.g., *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 759, 687 A.2d 506 (1997) (recognizing legitimate public policy interest of encouraging pretrial settlement of claims); the fact is that the legislature, in enacting § 4-61, expressed a preference for a limited waiver of the state's sovereign immunity in regard to claims arising under public works contracts. In other words, the legislature, in enacting § 4-61, has expressed its intent that a claim against the state is barred by the doctrine of sovereign immunity unless that claim arises directly under the public works contract. In such circumstances, it cannot be said that arbitration of the claim will further the public policy favoring pretrial resolution of disputes, because the claim is not one that the contractor may litigate in the first place. We, therefore, reject the construction of § 4-61 urged by ECAP.[6]

In this case, it is undisputed that ECAP's original demand for arbitration involved disputed claims that

---

[6] ECAP also claims that the trial court properly denied the state's application for injunctive relief because the state had failed to establish that it would be irreparably harmed if the court denied its application for such relief. See, e.g., *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 416, 722 A.2d 271 (1999) ("[i]t is well established that [a] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law" [internal quotation marks omitted]). ECAP's reliance on the traditional equitable prerequisites for the granting of injunctive relief is unavailing under the circumstances of this case. Whether ECAP's amended demand is arbitrable raises a question of subject matter jurisdiction. "[A] determination regarding a trial court's subject matter jurisdiction is a question of law [and] our review is plenary." (Internal quotation marks omitted.) Id., 410. Thus, although the trial court decided the case in the context of an application for injunctive relief, equitable considerations are not relevant to our resolution of this appeal. In essence, the judgment rendered by the trial court was in the nature of a declaratory judgment, a remedy that the state also sought in its prayer for relief. See footnote 4 of this opinion.

fell "under" the parties' original contract and was, therefore, arbitrable pursuant to § 4-61. It is clear, however, that the parties' purported settlement agreement, assuming that it could be proven, constitutes a separate agreement[7] that, although related to the original contract, does not arise "under" that contract. This conclusion is bolstered by the fact that the issues to be resolved in the arbitration of ECAP's disputed claim of a breached settlement agreement would bear little, if any, relation to the arbitration of ECAP's disputed claim under the parties' underlying contract. For example, arbitration of the parties' dispute over the alleged settlement agreement would involve testimony from the participants of the negotiations concerning whether the department's negotiators had represented that the $425,000 settlement was firm and binding, as ECAP claims, or whether the settlement offer was tentative, as the department claims. ECAP's claim regarding the alleged settlement agreement does not fall "under" ECAP's construction contract with the department because no provision of that contract relates, in any way, to an agreement to enter into settlement negotiations. Consequently, ECAP's amended demand for arbitration falls outside the purview of § 4-61.[8]

---

[7] At oral argument, ECAP asserted, for the first time, that the alleged agreement to settle is really a "change order," or a negotiation of new terms, "under" the construction contract, and that the breach of this change order falls "under" the contract. Cf. 4 J. McBride & T. Touhey, Government Contracts: Cyclopedic Guide to Law, Administration, Procedure (1991) § 28.10, p. 28-1 (change order allows government to alter aspects of contract performance when in government's best interest). We are not persuaded by this characterization of the alleged settlement agreement, and conclude, instead, that it is more in the nature of a separate contract that is related to, but wholly independent of, the original construction contract.

[8] We note that our interpretation of § 4-61 does not leave contractors without any remedy against the state in circumstances in which, as in this case, a contractor claims that the state has breached an agreement to settle an arbitrable dispute. Under General Statutes § 4-160, the claims commissioner may authorize an action against the state on any claim for which the state could be held liable if it were a private person. See, e.g., *Kroszer* v. *New Haven*, 212 Conn. 415, 423, 562 A.2d 1080 (1989), cert. denied, 493 U.S.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment granting the state's application for a permanent injunction.

In this opinion the other justices concurred.

1036, 110 S. Ct. 757, 107 L. Ed. 2d 774 (1990); *Doe* v. *Heintz*, 204 Conn. 17, 35, 526 A.2d 1318 (1987).