[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S APPLICATION FOR TEMPORARY INJUNCTION
This is an action brought by the State of Connecticut, Department of Public Works ("State") to enjoin defendant L. F. Pace Construction Company ("Pace") from proceeding in on arbitration scheduled before the defendant American Arbitration Association ("AAA"). On May 10, 1999 Pace moved to stay plaintiffs motion for temporary injunction so that the arbitration could proceed. Hearings were held before this court on July 2 and 7, 1999 and closing arguments heard on August 18, with additional briefs filed up to August 28, 1999. CT Page 12997
 I
The basic facts are not in dispute. The State invited bids for certain renovations and additions to Memorial Hall, Western Connecticut State University in Danbury (Conn. Project No. BD-RD-31) on October 15, 1993. A bid opening took place on December 8, 1993 at which Pace was the third low bidder. After the two lower bids had been rejected for various reasons, there ensued protracted negotiations culminating in the execution of a contract for construction of the project between the state and Pace dated September 29, 1994. Required performance and labor and material bonds were filed. After Pace commenced work under the contract a number of problems and disputes arose resulting in a letter of termination by the State on April 9, 1996. On October 24, 1996, Pace commenced suit against the State (L.F. PaceContribution. Inc. v. State of Connecticut, No. CV 960337366 S) claiming the termination was improper and after trial Judge Melville sustained this claim. Thereafter, on May 1, 1997 the parties entered a termination agreement essentially assigning the uncompleted contract to a third party. On March 26, 1998 Pace made a formal demand for arbitration of issues in dispute under the original contract, which was rejected by the state followed by an amended demand for arbitration by Pace dated October 30, 1998 which was also rejected. Thereafter, the State commenced this action, claiming Pace had no right to demand arbitration because it was a dissolved corporation on September 29, 1994.
At trial, it appeared that the secretary of state had sent a notice of intent dated October 29, 1993 to dissolve defendant corporation for failure to file an annual report followed by a notice of dissolution dated February 4, 1994. Lawrence E. Pace and Mark M. Pace incorporators and officers of Pace testified that they were not aware of these notifications until advised by their attorney, approximately August 1995. Presumably the attorney had learned of the dissolution from the office of the Attorney General. Thereafter, the officers and their attorney took reasonably prompt measures to obtain reinstatement which was granted by the secretary of state on December 26, 1995.
 II
The State claims that Pace's right to claim arbitration depends on the existence of a "construction contract" under General Statutes § 4-61 (a), which reads in pertinent part as CT Page 12998 follows:
 (a) Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state may, in the event of any disputed claims under such contract or claims arising out of the awarding of a contract by the Commissioner of Public Works, bring an action against the state to the superior court for the judicial district of Hartford for the purpose of having such claims determined.
Subsection (b) of this statute gives "any such person, firm or corporation having a claim under subsection (a) may submit a demand for arbitration of such claim. . . .
The State does not dispute that the agreement of September 29, 1994 had all the elements of a construction contract under sub-section (a) but argues that Pace cannot claim arbitration because it was not a proper corporation at the time it filed its bid and signed the contract and for a long time afterward until its reinstatement in December, 1995. It argues that this statute, which creates an exception from the sovereign immunity of the State, must be narrowly construed so as to exclude from its coverage any party which claims to be a corporation but in fact has been dissolved. It claims, therefore, that there was no "construction contract" under the statute because there was no legal party to any construction contract with the State.
 III
Pace claims that despite the dissolution by the Secretary of State, that it never lost its corporate status and was at least a de facto corporation at the time it entered the contract.
The State in its briefs refers variously to Pace as being "non-existent", "not in good standing", "defunct", and "dissolved" at the time of contract. It denies that Pace was a "de facto" corporation because there was no evidence of good faith efforts by Pace to effectuate a prompt reinstatement, pointing to the records of notice of dissolution in the office of the Secretary of State and the filing of annual reports for other corporations owned or controlled by the Pace family. But that CT Page 12999 evidence does not prove a lack of good faith or some devious-purpose on the part of Pace's officers. There was nothing to gain on their part by failing to file an annual report for Pace and their filing of other corporation reports during the same period tends to show at most an inexplicable inadvertence on their part. Two corporate officers testified they took immediate steps to reinstate the corporation on learning of its dissolution; there was no evidence to the contrary.
In Clark-Franklin-Kingston Press. Inc. v. Romano,12 Conn. App. 121, 125 (1987) our Appellate court in denying the personal liability of defendant officers for a corporate debt after the corporation has been dissolved for failure to file two annual reports held that the corporation continued to function as a de facto corporation because the individual defendants had made good faith efforts on learning of its dissolution and because they conducted business as a corporation believing they had a right to do so that "it would be inequitable to impose personal liability upon them due merely to a technical defect in the reinstatement process." The appellate court relies on various authorities which define "de facto" corporation, all of which would seem to apply to defendant in this case. See. Yale Cooperative Corp. v. Rogin,133 Conn. 563, 566 (1947).
The State was unable to show that it was prejudiced in any way by the status of Pace as a dissolved corporation during any portion of the period involved. Pace furnished all required performance and labor and material bonds when it entered the agreement on September 29, 1994 and performed services under the contract for which it was paid over a million dollars prior to termination. No claim has been made that the Bonds furnished in connection with the contracts were invalid or otherwise put into jeopardy by the interim period of corporate dissolution. At the time of the subsequent termination agreement on May 1, 1997, Pace had long been reinstated.
 IV
The State claims nevertheless that whatever de facto status a corporation might have in other private dealings, in dealing with the State, the sovereign immunity of the State is yielded so sparingly, that all legal requirements of its good standing must be satisfied by the corporation before it can legally enter a contract with the state. CT Page 13000
Indeed in a recent decision, our Supreme Court has held that the legislative waiver of the State's sovereign immunity under § 4-61 must be narrowly construed so that arbitration could not be demanded under a settlement agreement even though it was related to an earlier construction contract. Department of PublicWorks v. ECAP Construction Co, 250 Conn. 553 (1999). That decision is not controlling in this case since Pace's demand for arbitration dated March 26, 1998, clearly refers to the construction contract dated September 29, 1994, as the basis for arbitration. Pace refers to the settlement agreement dated May 1, 1997, only as containing language ostensibly preserving its right to demand arbitration, unlike the case before the Supreme Court in which the demand for arbitration was based on the settlement agreement itself
Moreover, the State has failed to cite any language in General Statutes § 4-61 or any other considerations to support such a stark interpretation of that statute in this case. At trial, Mr. Bruce Cornish, chief financial officer for the State Department of Public Works testified that he would not authorize the granting of a contract to a corporation he knew was dissolved, but that he would consider giving time for reinstatement to a successful bidder. Thus the only claim of prejudice by the State is that it lost its opportunity to refrain from entering a contract with Pace. This claim of prejudice is speculative at best and is further weakened by the long period of actual negotiations which was conducted by the parties before they State and Pace actually signed the construction contract in September, 1994. In Department of Public Works v. EcapConstruction Co., supra, it was recognized that "broad policy considerations favor pretrial resolution of disputes between contracting parties including the state" 250 Conn. 560-561. As far back as 1978, in Board of Education v. Frey, 174 Conn. 578,582 (1978) our supreme court has stated that doubts about an arbitration clause "should be resolved in favor of coverage".
 V.
Pace claims that in any case, the termination agreement of May 1, 1997, signed by the parties long after Pace's corporate reinstatement, independently gives Pace the right to demand arbitration.
That termination agreement provides in paragraph 4 that the parties "reserved unto themselves their respective claims and CT Page 13001 defenses under Section 4-61 of the Connecticut General Statutes, and otherwise at law or in equity with respect to the contract work performed by Pace. . . . It is further understood and agreed that all such claims and defenses shall be and are expressly deemed to be arbitrable in a single proceeding. . . ."
Pace agreed at trial that the issues to be arbitrated under that contract may include the issue of Pace's corporate status raised in this case. The language in the termination agreement indicates that the State independently agreed to arbitrate "all claims and defenses" under General Statutes § 4-61 and the prior construction contract. Again, our Supreme Court has indicated that all doubts about an arbitration clause should be resolved in favor of arbitration. White v. Kampner,229 Conn. 465, 472 (1994). See authorities cited in Saturn ConstructionCo., Inc. v. State of Connecticut, Superior Court of Hartford-New Britain at Hartford, No. CV 97-0567867-S (December 4, 1997 Wagner, J.)
It is concluded that the demand for arbitration in this case falls squarely under the construction contract dated September 29, 1994, that the contract was not invalid because of the technical and transient dissolution of Pace, that Pace's claim for arbitration was valid both under General Statutes § 4-61
and the termination agreement and therefore the State's application for temporary injunction is denied.
Jerry Wagner State Judge Referee