[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS #111 AND #113
On December 14, 2000, the plaintiffs, Ann Kennedy St. George, the estate of Louis Lewis, Anthony F. Slez, Jr., and Kevin Boyle brought this declaratory judgment action against the defendants, Abraham I. Gordon, executor of the estate of Edwin Mak,[1] Nancy Wyman, comptroller of the State of Connecticut and Richard Blumenthal, attorney general of the State of Connecticut. The plaintiffs seek a declaration pursuant to General Statutes §§ 5-141d[2] 3-112[3] that the estate of Mak is entitled to indemnification of a federal court judgment rendered against Mak and in favor of St. George and Lewis. The plaintiffs also seek a writ of mandamus ordering the comptroller to settle the plaintiffs' judgment against Mak.
The following facts are undisputed. On March 31, 1999, in consolidated cases brought pursuant to 42 U.S.C. § 1983,[4] the United States CT Page 15941-gy District Court for the District of Connecticut found in favor of St. George and Lewis and against Mak on St. George and Lewis' claims that Mak violated their rights under the first amendment to the United States constitution by taking adverse employment action against them in retaliation for their union organizing activities. Slez and Boyle represented St. George and Lewis in their suit against Mak. The office of the attorney general of the State of Connecticut initially represented Mak in the case but later withdrew pursuant to § 5-141d (b).[5] On February 15, 2000, judgment was entered in the case for the plaintiffs in the amount of $301,696.47, which amount included attorneys' fees, costs and prejudgment interest. The plaintiffs thereafter filed a claim against Mak's estate, which claim was allowed by the executor, Gordon, in the amount of $301,696.47. The estate, however, is without funds to satisfy the plaintiffs' claim. On September 8, 2000, the plaintiffs, together with Gordon, made a demand for payment on the judgment upon the comptroller pursuant to § 5-141d (a) and General Statutes § 3-112, which demand has not been paid.[6] The plaintiffs commenced this action thereafter on December 14, 2000. On February 26, 2001, Gordon filed a cross claim against the attorney general and comptroller, in which he also seeks a declaratory judgment as to whether the estate of Mak, through Gordon as executor, is entitled to indemnification of the federal court judgment against Mak.
On May 15, 2001, the attorney general and comptroller filed these motions to dismiss both the plaintiffs' complaint and Gordon's cross claim. The defendants move to dismiss the plaintiffs' complaint on the grounds that (1) the plaintiffs lack standing to bring their claims; (2) their claims are barred by the principles of sovereign immunity; and (3) they have failed to pursue remedies under General Statutes § 4-141[7]
et seq. The defendants move to dismiss Gordon's cross claim on the grounds of sovereign immunity as well as on the ground that he failed to pursue remedies under § 4-141 et seq.
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v.Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). "[S]tanding . . . implicates a court's subject matter jurisdiction, which may be raised at any point in judicial proceedings." Stamford Hospital v. Vega,236 Conn. 646, 656, 674 A.2d 821 (1996). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." Amore v. Frankel, 228 Conn. 358, 364,636 A.2d 786 (1994). "Under our exhaustion of administrative remedies doctrine, a trial court lacks subject matter jurisdiction over an action CT Page 15941-gz that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed." (Citation omitted.) Drumm v. Brown,245 Conn. 657, 676, 716 A.2d 50 (1998). "[I]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Lawrence Brunoli, Inc. v.Branford, 247 Conn. 407, 410-11, 722 A.2d 271 (1999).
Standing
The defendants assert that there is no legal precedent that would extend standing to a state employee's creditors, let alone the "potential creditors (the lawyers) of the creditors (the holders of the federal court judgments)," to bring a declaratory judgment action to determine the rights of that state employee to indemnification under § 5-141d. (Reply Memorandum in Support of Motion to Dismiss Complaint, pp. 2-3.) If a duty of indemnification exists under § 5-141d (a), the defendants argue, that duty is owed to Mak alone. (Memorandum in Support of Motion to Dismiss, p. 5.) The plaintiffs counter that as creditors of the state employee's estate, "it is difficult to conceive of a party who would have more of a real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy than the plaintiffs." (Plaintiff Memorandum, p. 7.) The defendants do not dispute Gordon's standing as executor of Mak's estate to bring this action.
"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue. . . ." (Citations omitted; internal quotation marks omitted.) State v. DeCaro, 252 Conn. 229,253, 745 A.2d 800 (2000). "Standing concerns the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." (Internal quotation marks omitted.) Med-Trans of Connecticut, Inc. v. Dept. of Public Health Addiction Services, 242 Conn. 152, 160, 699 A.2d 142 (1997). "It has been pointed out that the `zone of interests' test bears a family resemblance to the `scope of the risk' doctrine in the law of torts. . . . In tort CT Page 15941-ha law, it is not enough that the defendant's violation of the law caused injury to a plaintiff. The defendant must also owe that plaintiff a duty. Similarly, with respect to the law of standing, it is not enough that a party is injured by an act or omission of another party. The defendant must also have violated some duty owed to the plaintiff. Applying this doctrine to challenges of official government action or inaction, the relevant question would not be simply whether the official or agency violated the law, but rather whether the official or agency violated any duty to the plaintiff." (Citation omitted; internal quotation marks omitted.) Planning Zoning Commission v. Gaal,9 Conn. App. 538, 544, 520 A.2d 246 (1987), cert. denied, 203 Conn. 803,522 A.2d 294. "The plaintiff has the burden of proving standing." Finkv. Golenbock, 238 Conn. 183, 199, 680 A.2d 1243 (1996).
Section 5-141d (a) provides in relevant part that "[t]he state shall save harmless and indemnify any state officer or employee . . . and any member of the public defender service commission from financial loss and expense arising out of any claim, demand, suit or judgment by reason of his alleged negligence or alleged deprivation of any person's civil rights or other act or omission resulting in damage or injury, if the officer, employee or member is found to have been acting in the discharge of his duties or within the scope of his employment and such act or omission is found not to have been wanton, reckless or malicious." While there is little in the way of a legislative record to assist the court in discerning the legislature's intent in enacting § 5-141d, the language of the statute itself is plain and unambiguous with respect to who it protects, namely state employees. "The purpose of statutory construction is to give effect to the intended purpose of the legislature. . . . If the language of a statute is plain and unambiguous, we need look no further than the words actually used because we assume that the language expresses the legislature's intent." (Citations omitted; internal quotation marks omitted.) State v.DeFrancesco, 235 Conn. 426, 435, 668 A.2d 348 (1995). In Hunte v.Blumenthal, 238 Conn. 146, 153, 680 A.2d 1231 (1996), our Supreme Court stated that "[t]he manifest policy motivating [§ 5-141d is] the protection of state employees from liability for negligent acts that occur in the course of employment." (holding foster parents "employees" for purposes of § 5-141d). See also 84 Op. Atty. Gen. 336 (1984) ("At the risk of oversimplification, [§ 5-141d] protects agents from good faith, honest mistakes or omissions made in performing their jobs; conversely, it does not protect them from the consequences of misconduct which is flagrant in nature.")
The plaintiffs cite only two cases in support of their contention that they have standing to bring this action. Both cases, Saunders v.CT Page 15941-hbDenison, 20 Conn. 521 (1850) and Averill v. Lewis, 106 Conn. 582,138 A. 815 (1927) involved the statutory antecedents to General Statutes § 45a-186, which provides that "[a]ny person aggrieved by any order, denial or decree of a court of probate in any matter . . . may appeal therefrom to the Superior Court. . . ." While Saunders' first recognized a creditor's right to appeal a probate court decision which was adverse to the creditor's claim against an estate, that right is found today at General Statutes § 45a-380 (b), which provides "[a]ny creditor aggrieved by the order of the court of probate may . . . appeal from the order of distribution in accordance with sections 45a-186 to45a-193. . . ." Indeed, Saunders and Averill are simply two in a long line of cases in which our Appellate Courts have defined aggrievement for the purposes of determining whether a party has standing to appeal a probate court decree. See, e.g., Kerin v.Goldfarb, 160 Conn. 463, 467, 280 A.2d 143
(1971) (plaintiff must have pecuniary interest which has been injuriously affected by the decree appealed from); Kucej v. Kucej, 34 Conn. App. 579,582, 642 A.2d 81 (1994) (aggrievement exists where probate court decision adversely affected appellant's legally protected interest in estate).
The plaintiffs recitation of the law relating to the interest of creditors in the disposition of their debtors' estates does not address the issue of what rights the plaintiffs have or what duties are owed them under § 5-141d. Indeed, the plaintiffs have failed to cite to a single case or point to any legislative history that would support a conclusion that their interests as creditors is protected or even contemplated under § 5-141d (a). Thus they fail to establish that their interests are arguably within the zone of interests to be protected or regulated by § 5-141d or that the defendants violated a duty owed to them.
Moreover, because § 5-141d is in derogation of the state's sovereign immunity, any discussion of whether the statute confers upon the plaintiffs any rights or protections must keep in mind "the well settled principle that when the state waives sovereign immunity by statute a party attempting to sue under the legislative exception must come clearly within its provisions, because [s]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed. . . . Where there is any doubt about [the] meaning or intent [of a statute in derogation of sovereign immunity, it is] given the effect which makes the least rather than the most change in sovereign immunity. The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed by the use of express terms CT Page 15941-hc or by force of a necessary implication." (Internal quotation marks omitted.) Dept. of Public Works v. ECAP Construction Co., 250 Conn. 553,558-59, 737 A.2d 398 (1999). Accordingly, it is submitted that the plaintiffs lack standing to bring their claims.
Sovereign Immunity
The defendants argue that the doctrine of sovereign immunity bars the plaintiffs' and Gordon's claims because § 5-141d does not expressly waive the state's sovereign immunity nor authorize a legal challenge to the Attorney General's determinations regarding representation and indemnification under § 5-141d. (Memorandum in Support of Motion to Dismiss Cross Claim, p. 9.) The plaintiffs and Gordon counter that sovereign immunity does not bar an action for declaratory judgment where the defendants are alleged to have acted in excess of their statutory authority. (Memorandum in Support of Objection to Motion to Dismiss Cross-Claim, p. 3.) The defendants reply that there are no allegations in either complaint that come "remotely close to the level of wrongful conduct" required for a finding that a state officer has acted in excess of statutory authority. (Reply Memorandum in Support of Motion to Dismiss Cross Claim, p. 5.) The plaintiffs and Gordon also argue, presumably in the alternative, that indemnification under § 5-141d (a) is mandatory where the criteria for indemnification are met. (Plaintiffs' Memorandum, p. 10.) The defendants counter that even if, arguendo, § 5-141d (a) creates a right to indemnification, the complaint and cross claim fail to allege the two criteria required under subsection (a) in order for indemnification to occur: (1) a finding that Mak was acting within the scope of his employment when he fired St. George and Lewis and (2) a finding that Mak's conduct was not wilful, wanton or malicious. (Reply Memorandum in Support of Motion to Dismiss Complaint, p. 5.)
"[B]ecause the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." (Internal quotation marks omitted.) Shay v. Rossi, 253 Conn. 134, 168, 749 A.2d 1147
(2000) The Connecticut Supreme Court has recognized only three instances in which legal proceedings against the sovereign may be maintained: (1) an action for declaratory judgment or for an injunction that involves factual allegations of a constitutional infringement or violation.Fetterman v. University of Connecticut, 192 Conn. 539, 550-553,473 A.2d 1176 (1984); (2) an action for declaratory judgment or for an injunction that involves factual allegations that the State through its officers or agents has acted in excess of statutory authority. Shay v.Rossi, supra, 253 Conn. 169, and (3) the state has consented to suit by legislative enactment. Federal Deposit Ins. Corp. v. Peabody, N.E.,CT Page 15941-hdInc., 239 Conn. 93, 99, 680 A.2d 1321 (1996). The plaintiffs' and Gordon's claims fall under the second and third categories of exceptions to sovereign immunity, namely they allege that the Attorney General exceeded his statutory authority by refusing Mak indemnification pursuant to § 5-141d and/or that the state has consented to suit by making indemnification under the section mandatory.
"In those cases in which it is alleged that the defendant officer is proceeding under an unconstitutional statute or in excess of his statutory authority, the interest in the protection of the plaintiff's right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine. . . . On the other hand, where no substantial claim is made that the defendant officer is acting pursuant to an unconstitutional enactment or in excess of his statutory authority, the purpose of the sovereign immunity doctrine requires dismissal of the suit for want of jurisdiction." (Internal quotation marks omitted.) Horton v. Meskill, 172 Conn. 615, 624, 376 A.2d 359
(1977). "[I]n order to overcome sovereign immunity, [however,] the plaintiffs must do more than allege that the defendants' conduct was in excess of their statutory authority; they must also allege or otherwise establish facts that reasonably support those allegations." Shay v.Rossi, supra, 253 Conn. 174-75.
Antinerella v. Rioux, 229 Conn. 479, 487, 642 A.2d 699 (1994) was the first time our Supreme Court considered what facts a plaintiff must allege in order to state a substantial claim that a state officer had acted in excess of his statutory authority. "[T]he dispositive issued faced by the trial court in this case in determining whether to dismiss the action on the grounds of sovereign immunity [is] whether the defendant [has] allegedly acted in excess of his statutory authority when he terminated the plaintiff's employment." Id., 488-89. There, the Supreme Court concluded that a deputy sheriff who alleged that the defendant high sheriff fired him in order to take his business and to personally benefit under an illegal fee splitting arrangement with other sheriffs, had alleged conduct in excess of a high sheriff's authority. Id., 491-92. The court stated, "[w]hen an elected official acts within the limits of his or her authority, we have little occasion to supervise, review, restrain or punish . . . and no reason to circumvent the doctrine of sovereign immunity. . . . By our decision we do not chip away at the doctrine, relax its parameters or expand any well developed exceptions. Rather than rely on any exception to the rule, we hold simply that the doctrine does not apply when there is a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." Id., 497. CT Page 15941-he
Similarly, in Shay v. Rossi, supra, our Supreme Court held that the doctrine of sovereign immunity did not protect employees of the department of children and families where there were allegations, supported by substantial evidence, that they had filed neglect and abuse petitions against the plaintiffs, not because they believed the plaintiffs were guilty of neglect and abuse but, rather, merely to justify prior and unjustified actions against them. The court stated, "[t]he totality of these facts, if proven, would permit a fact finder to infer that the defendants filed the neglect and abuse petitions knowing that they were unjustified, and continued them with that knowledge . . . and that they did so, not for the statutory purpose of protection of the children, but to justify their prior unjustified actions. These inferences would be sufficient to establish that the defendants' conduct was sufficiently egregious as to constitute conduct that was in excess of their statutory authority." Shay v. Rossi, supra, 253 Conn. 180.
It would appear that the allegations contained in the plaintiffs' complaint fall considerably short of the allegations required in order to come under the exception to sovereign immunity which permits actions against state officials acting in excess of statutory authority. UnderShay v. Rossi and Antinerella v. Rioux, the alleged conduct by the state official must not only be egregious it must also be supported by substantial factual allegations. Here, however, the complaint alleges only error on the part of the attorney general in the performance of his duties under § 5-141d. "Upon information and belief, defendant attorney general has denied indemnification based upon erroneous interpretation of law, and/or misapplication of fact, and/or has acted in a discretionary manner where discretion is not statutorily allowable. . . ." (Complaint, p. 5, ¶ 26.) Moreover, the plaintiffs do not allege nor do they argue that the attorney general's error was motivated by an improper or unlawful purpose. Our Supreme Court, however, has on several occasions noted the distinction between "acts of state officials that are in excess of statutory authority and those that constitute an erroneous exercise of that authority. Previous decisions of this court have carefully distinguished situations in which the official acted within the limitations of his authority from those in which official duty was transcended. . . . We have not applied this distinction, however, when the malfeasance or nonfeasance of a state officer is alleged to constitute a violation of a constitutional right." (Citation Omitted.) Savage v. Aronson,214 Conn. 256, 265, 571 A.2d 696 (1990).
While not cloaked as such, the plaintiffs' alternative argument that indemnification under § 5-141d (a) is mandatory is, for all practical CT Page 15941-hf purposes, an argument that the state has consented to suit because "[a] statute conferring a privilege or a right carries with it by implication everything necessary to ensure the realization of that privilege or to establish that right in order to make it effectual and complete." (Internal quotation marks omitted.) Redevelopment Agency v. NorwalkAluminum Foundry Corp., 155 Conn. 397, 405, 233 A.2d 1 (1967).
"In order to determine whether a statute's provisions are mandatory [the court has] traditionally looked beyond the use of the world shall and examined the statute's essential purpose. . . . The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory. . . ." (Citations omitted; internal quotations marks omitted.) United Illuminating Co. v.New Haven, 240 Conn. 422, 465-66, 692 A.2d 742 (1997).
Section 5-141d (a) provides in relevant part: "The state shall save harmless and indemnify any state officer or employee . . . and any member of the public defender services commission from financial loss and expense arising out of any claim, demand, suit or judgment by reason of his alleged negligence or alleged deprivation of any person's civil rights or other act or omission resulting in damage or injury if theofficer, employee or member is found to have been acting in the dischargeof his duties or within the scope of his employment and such act oromission is found not to have been wanton, reckless or malicious."
(Emphasis added.) The manifest purpose of the statute is to protect state officials and employees from financial loss resulting from law suits which arise out of the performance of their jobs. Hunte v. Blumenthal,
supra, 239 Conn. 153. Thus the prescribed mode of action, indemnification, is the essence of that which § 5-141d (a) seeks to accomplish and, accordingly, the court should conclude that the statute is mandatory. Subsection (a), however, conditions indemnification upon two findings: (1) that the employee was acting in the discharge of his duties or within the scope of his employment and (2) that the act or omission was not wanton, reckless or malicious. "[W]hen the state waives sovereign immunity by statute a party attempting to sue under the legislative exception must come clearly within its provisions. . . ." (Internal quotation marks omitted.) Dept. of Public Works v. ECAPConstruction Co., supra, 250 Conn. 558. "Where there is any doubt about [the] meaning or intent [of a statute in derogation of sovereign CT Page 15941-hg immunity, it is] given the effect which makes the least rather than the most change in sovereign immunity." (Internal quotation marks omitted.)Federal Deposit Ins. Corp. v. Peabody, N.E., Inc., supra, 239 Conn. 102. Thus, for the plaintiffs and Gordon to prevail in this action, they must allege that the federal court (1) found that Mak was acting in the scope of his employment when he fired St. George and Lewis and (2) found that the firing was not wanton, reckless or malicious. The plaintiffs cannot allege such findings because no such findings were made. The plaintiffs argue, however, that the required findings are necessarily implied in the federal court's decision (1) because there was no award of punitive damages and (2) because Mak was found to have violated St. George and Lewis' first amendment rights pursuant to a federal law which provides redress for such violations only when they are done "under color of state." 42 U.S.C. § 1983. The plaintiffs reason that a finding that Mak was acting under color of state for the purposes of the federal claims is equivalent to a finding that he was acting in the scope of his employment for the purposes of indemnification under § 5-141d (a). (Memorandum in Support of Objection to Motion to Dismiss Cross Claim, p. 5.) The plaintiffs' reasoning, however, ignores Antinerella v. Rioux,
supra, which expressly held that a defendant high sheriff who fired a deputy sheriff for an illegal purpose was not acting within the scope of his employment for the purposes of immunity under General Statutes §4-165,[8] despite the defendant's argument that he was statutorily authorized to terminate a deputy sheriff's employment at will. There, our Supreme Court interpreted "within the scope of his [or her] employment" to mean "reasonably fulfilling the duties of employment or doing something incidental to it," and concluded that "it would be inconsistent and inappropriate for us to consider [unlawful] conduct by the defendant to be incidental to his employment as high sheriff or beneficial to the government as his employer." Antinerella v. Rioux, supra, 229 Conn. 498.
It would be similarly inappropriate for this court to consider the conduct of the high sheriff in the present case to have been within the scope of his employment for the purposes of indemnification under §5-141d (a). The federal district court found that Mak violated Lewis' and St. George's first amendment rights to free speech by firing them in retaliation for their union organizing activities. Indemnification under § 5-141d (a) is mandatory only where the employee is "found to have been acting in the discharge of his duties or within the scope of his employment," which finding is not alleged nor possible under the facts of this case. Therefore, because the plaintiffs' and Gordon's claims do not fall within the clear provisions of § 5-141d (a) they are barred by the doctrine of sovereign immunity. CT Page 15941-hh
For the foregoing reasons the defendants' motions to dismiss the plaintiffs' claims and the cross plaintiff's claims are hereby granted.[9]
Skolnick, Judge