## LAWRENCE BRUNOLI, INC. *v.* TOWN OF BRANFORD
### (SC 15872)

Borden, Berdon, Norcott, Katz and McDonald, Js.

Argued September 23, 1998—officially released January 5, 1999

*John C. FitzGerald, Jr.*, for the appellant (plaintiff).

*Brian J. Donnell*, with whom was *Robert M. Barrack*, for the appellee (defendant).

*Opinion*

NORCOTT, J. The issue in this appeal[1] is whether the court has subject matter jurisdiction over a claim for damages, rather than for injunctive relief, allegedly resulting from fraud, corruption or favoritism in the award of a contract that is subject to competitive municipal bidding requirements. The plaintiff, Lawrence Brunoli, Inc., brought this action against the defendant, the town of Branford, for money damages that the plaintiff claimed to have received as a result of improperly having been denied a certain municipal construction contract on which it had submitted a bid. The trial court dismissed the action on the ground that the plaintiff had no standing to assert a claim for damages in such a situation, and that a disappointed bidder is confined to an action for injunctive relief. The plaintiff claims that an unsuccessful bidder for a municipal construction contract is not limited to injunctive relief, but instead may seek money damages from the municipality. We conclude that a cause of action for money damages

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

is not available to unsuccessful bidders on municipal contracts, regardless of whether there are allegations of fraud, favoritism or corruption in the bidding process. Accordingly, we affirm the judgment of the trial court.

According to the allegations of the plaintiff's revised complaint, which for purposes of this appeal we assume to be true, the defendant published an invitation to bid on a municipal construction project for renovations to and alterations of Branford High School, in response to which the plaintiff submitted a bid. The plaintiff further alleged that, on February 3, 1997, it was informed that it was the "lowest qualified bidder," but that the defendant subsequently withdrew its award of the contract to the plaintiff because the plaintiff had failed to attend a prebid conference regarding details of the work to be performed under the contract.[2] In addition, the complaint alleged that the defendant had permitted the plaintiff to bid on the project although the defendant knew that the plaintiff had not attended the prebid conference, and that the defendant therefore had waived any attendance requirement by accepting the bid. According to the complaint, the defendant later awarded the contract to the second lowest bidder, in

---

[2] Each bid package purchased by the prospective bidders contained instructions to the bidders, which provided in relevant part:

"1.03 RECEIPT AND AWARD OF BIDS . . .

"B. Bid will be awarded based on the *lowest qualified bid.*

"C. The [defendant] *reserves the right to accept or reject any bid* to best serve its interests, or to hold the bids for forty-five (45) days before decision.

"1.04 QUALIFICATIONS OF BIDDER . . .

"B. The [defendant] may make such investigation as he deems necessary to determine the ability of the Bidder to perform the work, and the bidder shall furnish to the [defendant] all such information and data for this purpose as the [defendant] may request. *The [defendant] reserves the right to reject any bid if the evidence submitted by or investigation of such bidder fails to satisfy the [defendant] that such bidder is properly qualified.* . . .

"1.06 PRE-BID CONFERENCE

"A. A Pre-Bid Conference will be held at 10:00 AM, Thursday, January 16, 1997 at the Branford High School. *Attendance of contractors who intend to submit a bid is mandatory.* . . ." (Emphasis added.)

violation of § 75-2 of the code of the town of Branford.[3] The plaintiff alleged further that the defendant's conduct constituted favoritism toward the ultimate contract awardee. Finally, the plaintiff alleged that the defendant had breached its agreement to award the contract to the lowest qualified bidder, causing the plaintiff to suffer damages.

The defendant moved to dismiss the complaint for lack of subject matter jurisdiction on the ground, inter alia, that the plaintiff "is seeking money damages rather than injunctive relief, and Connecticut law only affords standing to disappointed bidders for public works contracts to bring actions for injunctive relief to vindicate the public interest in the competitive bidding process as private attorneys general." The trial court granted the defendant's motion and rendered judgment dismissing the plaintiff's action. This appeal followed. The plaintiff claims that the trial court improperly concluded that despite allegations of fraud, favoritism or corruption in the bidding process, an unsuccessful bidder for a municipal public works contract may not maintain an action for money damages. We disagree.

We first note that, because "[a] determination regarding a trial court's subject matter jurisdiction is a question of law," our review is plenary. *Doe* v. *Roe*, 246 Conn. 652, 660, 717 A.2d 706 (1998). It is well established that "[i]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing

[3] Section 75-2 of the code of the town of Branford provides in relevant part: "Advertising and bids required. . . .

"A. Amounts; exceptions; definitions. . . .

"(1) Hereafter, all work or materials and supplies furnished to and purchased by the town . . . *shall be awarded* after advertising the same in some newspaper with a general circulation in the town *to the lowest responsible bidder* . . . ." (Emphasis added.)

them in a manner most favorable to the pleader."
*Pamela B.* v. *Ment*, 244 Conn. 296, 308, 709 A.2d 1089
(1998). In the present case, however, we need not reach
and, therefore, decline to address, the question of
whether the facts alleged in the plaintiff's complaint
constitute fraud, corruption or favoritism, because we
conclude that, as a matter of law, an unsuccessful bid-
der to a municipal contract has no standing to assert
a cause of action for money damages for failure of
the municipality to follow its competitive bidding laws,
regardless of whether the plaintiff alleges fraud, corrup-
tion or favoritism.

An unsuccessful bidder to a municipal contract has
available to him only very limited forms of standing.
"Standing is the legal right to set judicial machinery in
motion. One cannot rightfully invoke the jurisdiction
of the court unless he has, in an individual or representa-
tive capacity, some real interest in the cause of action,
or a legal or equitable right, title or interest in the subject
matter of the controversy." (Internal quotation marks
omitted.) *Ardmare Construction Co.* v. *Freedman*, 191
Conn. 497, 501, 467 A.2d 674 (1983). It is axiomatic that
a party cannot be liable for breaching a contract with
another party unless a contract exists between the par-
ties that could be breached. In the realm of competitive
municipal bidding, it is well settled that a contract is
created through the municipality's action of awarding
a contract, not through the submission of a bid by the
contractor. "A bid is a binding offer to make a contract.
. . . A bid, even the lowest responsible one, submitted
in response to an invitation for bids is only an offer
which, until accepted by the municipality, does not give
rise to a contract between the parties. . . . Further-
more, where the municipality reserves the right to reject
any and all bids, no bidder can claim any contractual
rights until he has been awarded the contract." (Cita-
tions omitted; internal quotation marks omitted.) *John*

*J. Brennan Construction Corp., Inc.* v. *Shelton,* 187 Conn. 695, 702, 448 A.2d 180 (1982). Except in certain specified circumstances, "an unsuccessful bidder has no standing to challenge the award of a public contract." *Ardmare Construction Co.* v. *Freedman,* supra, 501.

If an unsuccessful bidder has standing to bring a claim against a municipality, therefore, such standing must be derived from a source other than its bid submitted in response to the invitation to bid. That source is the municipal bidding statutes themselves. *Spiniello Construction Co.* v. *Manchester,* 189 Conn. 539, 543–44, 456 A.2d 1199 (1983). "[O]nly where fraud, corruption or favoritism has influenced the conduct of the bidding officials or when the very object and integrity of the competitive bidding process is defeated by the conduct of municipal officials, does an unsuccessful bidder have standing to challenge the award." (Internal quotation marks omitted.) *Ardmare Construction Co.* v. *Freedman,* supra, 191 Conn. 501. A review of our prior cases illustrates, however, that the only remedy afforded to unsuccessful bidders under the municipal bidding statutes has been injunctive relief against the awarding of the contract to the illegally favored bidder. See, e.g., *Blesso Fire Systems, Inc.* v. *Eastern Connecticut State University,* 245 Conn. 252, 713 A.2d 1283 (1998); *Unisys Corp.* v. *Dept. of Labor,* 220 Conn. 689, 600 A.2d 1019 (1991); *Ardmare Construction Co.* v. *Freedman,* supra, 497; *Spiniello Construction Co.* v. *Manchester,* supra, 539; *John J. Brennan Construction Corp., Inc.* v. *Shelton,* supra, 187 Conn. 695; *Austin* v. *Housing Authority,* 143 Conn. 338, 122 A.2d 399 (1956).

Providing unsuccessful bidders with an equitable remedy alone is consistent with the policies that we previously have identified as underlying the municipal bidding statutes. This court has long maintained that "[m]unicipal competitive bidding laws are enacted to

guard against such evils as favoritism, fraud or corruption in the award of contracts, to secure the best product at the lowest price, *and to benefit the taxpayers, not the bidders*; they should be construed to accomplish these purposes fairly and reasonably *with sole reference to the public interest.*" (Emphasis added.) *John J. Brennan Construction Corp., Inc.* v. *Shelton,* supra, 187 Conn. 702; *Ardmare Construction Co.* v. *Freedman,* supra, 191 Conn. 504. In *Spiniello Construction Co.* v. *Manchester,* supra, 189 Conn. 544–45, we substantially adopted the approach to unsuccessful bidder claims that was described by the Court of Appeals for the District of Columbia in *Scanwell Laboratories, Inc.* v. *Shaffer,* 424 F.2d 859, 864 (D.C. Cir. 1970). In *Scanwell Laboratories, Inc.,* the court concluded that an unsuccessful bidder may bring an action against the municipality, but rather than being an action to vindicate the personal harm the bidder perceives it has suffered, "the [action] itself is brought in the public interest by one acting essentially as a 'private attorney general.' " Id., 864. That public interest is triggered when a municipality is involved in some form of fraud, corruption or favoritism, or "when the very object and integrity of the competitive bidding process is defeated by the conduct of municipal officials." *Spiniello Construction Co.* v. *Manchester,* supra, 544; see also *Ardmare Construction Co.* v. *Freedman,* supra, 504–505. It would be inconsistent with these policies to permit an unsuccessful bidder to assert a private claim for damages.

Furthermore, we have noted previously that we must "strike the proper balance between fulfilling the purposes of the competitive bidding statutes and preventing frequent litigation that might result in extensive delay in the commencement and completion of government projects to the detriment of the public." *Ardmare Construction Co.* v. *Freedman,* supra, 191 Conn. 505. To grant standing to unsuccessful bidders who seek to

bring actions for money damages would undermine the purpose underlying the municipal bidding statutes. If a municipality is found to have committed fraud, corruption or favoritism and is accordingly enjoined from awarding the bid to the designated awardee, the public is protected because the municipality is barred from paying more than the best price for the work to be performed. If, however, an unsuccessful bidder is permitted to assert a claim for money damages, rather than injunctive relief against awarding the contract to the successful bidder, the taxpayers of the municipality would be subject to paying once to have the work performed by the successful bidder and, if the unsuccessful bidder were successful, again for damages above and beyond the cost of the project. Such extra costs clearly are not in the public interest.[4]

Further, a municipality must know, in advance of awarding a contract, what the ultimate costs of the project will be. If an unsuccessful bidder were able to

---

[4] We addressed a related example of the detriment to the public interest that arises when citizens of a municipality are forced to pay for more than the cost of the actual work to be performed in *Blesso Fire Systems, Inc.* v. *Eastern Connecticut State University*, supra, 245 Conn. 252. In *Blesso Fire Systems, Inc.*, an unsuccessful bidder for a fire alarm system contract brought an action for injunctive relief, then later during the course of the plaintiff's appeal, the defendant put the entire project out to be rebid. Id., 256. The plaintiff was not awarded the contract during this rebidding process, and did not challenge the award to a different bidder. We dismissed the plaintiff's appeal as moot in light of the rescission of the first contract and the rebidding process that had occurred. Id. The plaintiff's second claim, beyond the injunction, was for a writ of mandamus to compel the state to award it the contract in question. We noted, however, that where the second contract award was proper according to the municipal bidding statute, if the second contract remained in effect and the mandamus action were granted, the result would be to "require the university to enter into *two* contracts for the same work." (Emphasis in original.) Id., 257. To do as the plaintiff urges in the present case and provide money damages to unsuccessful bidders would provide a result that is different only in degree, not in kind, from the bizarre result of awarding two contracts for the same project that we sought to avoid in *Blesso Fire Systems, Inc.*

eschew a claim for injunctive relief and assert a claim for damages, the municipality would not know with certainty what those costs are until the limitations period for such a claim for damages had passed.

The plaintiff contends, nevertheless, that the threat of public discontent at paying damages would provide a more effective deterrent to keep bidding officials from committing fraud, corruption or favoritism than does the threat of an injunction. We do not find this argument to be persuasive. Our cases, in which unsuccessful bidders sought injunctive relief in circumstances of fraud, corruption or favoritism, constitute persuasive evidence that money damages are not required as an incentive for unsuccessful bidders to act as watchdogs on the municipal bidding process. There already exists in the realm of injunctive relief sufficient incentive for unsuccessful bidders to seek judicial intervention, which in turn acts as a deterrent upon bidding officials to violate the bidding statutes, without the detriment to the public interest that an action for money damages would cause.[5]

---

[5] The majority of courts have concluded that damages may not be recovered under the municipal bidding statutes. Annot., 65 A.L.R.4th 99, § 2 [a] (1988). The plaintiff contends, however, that we should look for guidance to those jurisdictions that allow a cause of action for money damages by unsuccessful bidders to municipal contracts when fraud, corruption or favoritism are alleged. See, e.g., *North Central Utilities, Inc.* v. *Walker Community Water System, Inc.*, 437 So. 2d 922, 924–25 (La. App. 1983) (impliedly permitting recovery for lost profits by remanding case in which plaintiff sought lost profits, without commenting on prayer for relief); *Telephone Associates, Inc.* v. *St. Louis County Board*, 364 N.W.2d 378, 382–83 (Minn. 1985) (permitting recovery of costs incurred in preparing bid including reasonable attorney fees under promissory estoppel theory, for purpose of encouraging "proper challenges to the bid-letting process" without making such plaintiff "bear the expense of its actions"); *Marbucco Corp.* v. *Manchester*, 137 N.H. 629, 634, 632 A.2d 522 (1993) (constructing hybrid scheme under which recovery of lost profits by unsuccessful bidder is permitted when municipality's conduct is "tantamount to bad faith," and recovery of expenses incurred in preparing bid is permitted for mere wrongful failure to award contract to lowest responsible bidder). Unlike the dissent, we are not persuaded by the reasoning of those decisions.

Finally, recognizing standing to an unsuccessful bidder to seek money damages effectively would eliminate the availability of injunctive relief in this context. It is well established that " '[a] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law.' " *Walton* v. *New Hartford*, 223 Conn. 155, 165, 612 A.2d 1153 (1992). If an unsuccessful bidder had an action in damages available to it as an alternative form of relief, we fail to see how it would ever be a qualified candidate for injunctive relief. This would eliminate the more efficacious remedy, to the detriment of the public.

We reaffirm the conclusion that this court consistently has maintained: where a municipality has engaged in fraud, corruption or favoritism, an unsuccessful bidder does have standing under the applicable, competitive municipal bidding provision to bring an action for injunctive relief. We hold, however, that an unsuccessful bidder does not have standing to seek money damages. To conclude otherwise would run counter to the sound and established purpose of protecting the public interest that underlies the municipal bidding statutes.

The judgment is affirmed.

In this opinion BORDEN, KATZ and MCDONALD, Js., concurred.

BERDON, J., dissenting. This case involves an important public policy consideration—whether a municipality should be subject to liability for damages because it rejected the bid of the lowest qualified bidder in violation of the town code that requires the town to award contracts to such a bidder. "Such requirements [of competitive bidding] as are contained in the [code] in question are for the purpose of inviting competition,

to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts, and to secure the best work or supplies at the lowest price practicable, and are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest. 10 McQuillin, Municipal Corporations (3d Ed.) § 29.29." (Internal quotation marks omitted.) *Austin* v. *Housing Authority*, 143 Conn. 338, 345, 122 A.2d 399 (1956). The question, therefore, is how to best protect those interests. I would hold that the public interest can best be vindicated by allowing the lowest qualified bidder who has not been awarded the contract to seek damages.

In the present case, the plaintiff, Lawrence Brunoli, Inc., alleges that the defendant, the town of Branford, had informed the plaintiff that it was the "lowest qualified bidder" for the construction project in question, but did not award the contract to the plaintiff because it apparently failed to attend a prebid conference. The plaintiff, however, alleges in its complaint that the defendant's invitation to bid did not specify that the prebid conference was a requirement and, alternatively, that if it did, it waived any such requirement.[1] According to the plaintiff, the defendant engaged in favoritism when it awarded the contract to the second lowest bidder, whose bid was $344,000 higher than the plaintiff's, in violation of § 75-2 of the Branford code.[2] The plaintiff brought the present action for money damages

---

[1] "Since the motion to dismiss filed by the [defendant] does not seek to introduce facts outside of the record it . . . admits all well pleaded facts, the complaint being construed most favorably to the plaintiff." (Internal quotation marks omitted.) *Duguay* v. *Hopkins*, 191 Conn. 222, 227, 464 A.2d 45 (1983).

[2] See footnote 3 of the majority opinion for the relevant text of § 75-2 of the Branford code.

that it allegedly suffered as a result of this violation. The defendant's motion to dismiss the complaint for lack of subject matter jurisdiction was granted and the plaintiff appealed.

On the basis of the plaintiff's allegations, I recognize that the taxpayers of the defendant already have been penalized in the amount of $344,000 as a result of the defendant's refusal to accept the plaintiff's low bid. According to the majority opinion, the public, through the defendant, should not be penalized further by having to pay monetary damages, notwithstanding any potential fraud, favoritism or corruption. Similarly, other jurisdictions that have prohibited monetary damages have done so in reliance on the same two theories that the majority espouses: (1) that the competitive bidding laws were designed to protect the government and not the individual bidders; and (2) that the treasury has already been injured by paying too high a price for the goods and service. Annot., 65 A.L.R.4th 93, 99 (1988). Additionally, the majority asserts that the availability of monetary damages would create excessive litigation and cause uncertainty for the municipal government with respect to the costs of the project. Such claims are not only unconvincing, but also ignore the problem of the lack of incentive for the private sector to keep government honest and the reality that costs of such projects are typically elastic.

In my view, the assessment of monetary damages against the defendant would best serve the public interests at stake. I agree with those jurisdictions that have determined that "[a]n award of money damages would be in the public interest because it would deter such misconduct by public entities in the future." *Marbucco Corp.* v. *Manchester*, 137 N.H. 629, 633, 632 A.2d 522 (1993); see also *Swinerton & Walberg Co.* v. *Inglewood-Los Angeles County Civic Center Authority*, 40 Cal. App. 3d 98, 105, 114 Cal. Rptr. 834 (1974). As the plaintiff

asserts, the spector of public discontent at paying monetary damages is more likely to deter any potential official misconduct than if only injunctive relief is at stake. Moreover, such a deterrent would encourage more bidders, which would increase competition and thereby lower costs to the taxpayers. See *Owen of Georgia, Inc.* v. *Shelby County*, 648 F.2d 1084, 1095 (6th Cir. 1981) (applying Tennessee law, "it is doubtful that many contractors would bid at all knowing the deck was stacked against them"). Lastly, awarding monetary damages would also compensate the plaintiff for its justifiable reliance upon the municipal code.

It is true, as the majority points out, that we have thus far recognized that in certain circumstances the lowest bidder has standing to bring an action for an injunction. See, e.g., *Spiniello Construction Co.* v. *Manchester*, 189 Conn. 539, 544, 456 A.2d 1199 (1983). Nevertheless, the majority is unable to cite to any case wherein we have, on a contractual theory, rejected a cause of action for damages. The majority merely states that since there was no contract between the plaintiff and the defendant, there is no cause of action for damages. This simplistic answer, however, does not address the plaintiff's claim.

The law of contract does not necessarily start with an offer and end with the acceptance of that offer, for we have always recognized that variations are often required in order to do justice. In this matter, the plaintiff reasonably relied on the defendant's promise that if there was to be an award, the bid would be awarded to the lowest qualified bidder. Indeed, this promise is embodied in § 75-2 (A) (1) of the Branford code, which provides that "all work or materials and supplies furnished to and purchased by the town . . . shall be *awarded* after advertising . . . to the *lowest responsible* bidder . . . ." (Emphasis added.)

This court has long recognized that a "promise which the promisor should reasonably expect to induce action . . . on the part of the promisee . . . and which does induce such action . . . is binding if injustice can be avoided only by enforcement of the promise." (Internal quotation marks omitted.) *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, 202 Conn. 206, 213, 520 A.2d 217 (1987), quoting 1 Restatement (Second), Contracts § 90 (1973); *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 475, 427 A.2d 385 (1980). When government officials fail to award a contract to the lowest qualified bidder in violation of a code, ordinance or statute, "injustice to [the low bidder], the promisee, can be avoided only by at least the partial enforcement of the [government's] promise . . . . [Furthermore, t]o hold that [the low bidder] was not entitled to rely upon this promise . . . would make the [government's] promise an illusory one and render the whole competitive bidding process nugatory." *Swinerton & Walberg Co.* v. *Inglewood-Los Angeles County Civic Center Authority*, supra, 40 Cal. App. 3d 104. Such reasoning has encouraged other jurisdictions to award damages to low bidders who have claimed damages directly attributable to their reliance on a low bidder statute. See, e.g., *Owen of Georgia, Inc.* v. *Shelby County*, supra, 648 F.2d 1094–96; *Swinerton & Walberg Co.* v. *Inglewood-Los Angeles County Civic Center Authority*, supra, 103–105; *Marbucco Corp.* v. *Manchester*, supra, 137 N.H. 633–34. Similarly, I would hold that, based upon the contractual theory of promissory estoppel, the plaintiff has alleged a cause of action for money damages over which the court has jurisdiction. Therefore, the trial court should not have dismissed the action.

The measure of damages with respect to an action predicated on promissory estoppel "may be limited as

justice requires." 1 Restatement (Second), Contracts § 90 (1981). I would adopt the New Hampshire approach as follows: "In the ordinary case, the damages that an unsuccessful low bidder may recover should be limited to those it sustained directly by reason of its justifiable reliance upon the municipality's promise to award the contract to the lowest responsible bidder submitting all essential information prior to the bidding deadline, if it awarded it at all. Hence, damages ordinarily should be limited to the expenses incurred by the lowest bidder in its fruitless participation in the competitive bidding process, i.e., its bid preparation costs.[3] See *Paul Sardella Construction Co.* v. *Braintree Housing Authority*, 371 Mass. 235, 243, 356 N.E.2d 249, 254 (1976). To permit the recovery of greater damages in such cases could drain the public fisc in response to mere carelessness on the part of low level government officials. If a disappointed low bidder complies with all requirements of the bid instructions but is deprived of the contract through some conduct of the awarding authority tantamount to bad faith, however, then the recovery of lost profits should be the measure of damages. See [*Peabody Construction Co.* v. *Boston*, 28 Mass. App. 100, 105–106, 546 N.E.2d 898 (1989)]. The greater deterrence resulting from an entitlement to lost profits is justified when bad faith is proven because a municipality's bad faith undermines the purpose of competitive bidding. . . . [P]ublic confidence in government is eroded when municipal officials act in bad faith." (Citation omitted; internal quotation marks omitted.) *Marbucco Corp.* v. *Manchester*, supra, 137 N.H. 634.

I dissent.

---

[3] Additionally, I would also allow the plaintiff to recover the costs, including attorney's fees, that it incurs in its attempt to enforce its rights under the municipal code. See generally *Owen of Georgia, Inc.* v. *Shelby County*, supra, 648 F.2d 1096.