[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO DISMISS(#103)
 I. BACKGROUND
On March 10, 1999, the plaintiffs, New England National LLC, Jeffrey A. Torrance, the Torrance Family Limited Partnership and Robert A. Blatt (hereinafter "the plaintiffs"), filed a six count complaint against the defendants, Kabro of East Lyme LLC, Larry Kaplan, Mel Kaplan, Steven Kaplan, Kabro Associates LLC and Ronald J. Rosenberg, Esq. (hereinafter "the defendants"), arising out of the defendants' alleged breach of an agreement to purchase real property owned and managed by the plaintiffs.
The plaintiffs allege that on or about July 16, 1998, they entered a real estate purchase and sale contract with the defendants, wherein the defendants agreed to purchase approximately 305 acres of land located in East Lyme, Connecticut from the plaintiffs, at an agreed upon price of six million, six hundred thousand dollars ($6,600,000.00). The plaintiffs also allege that the defendants made a one hundred thousand dollar ($100,000.00) deposit, which was to be held by the buyer's attorney in escrow during the pendency of the agreement.
Count one alleges that after several attempts to schedule a closing, the defendants ultimately indicated on September 24, 1998 that they had no intention to close, and therefore are in breach of the purchase and sale agreement. The plaintiffs further allege that the defendants have defaulted on their obligations CT Page 2456 and have violated the covenant of good faith and fair dealing implied in all contracts. Count two alleges personal liability on the part of the defendants Steven Kaplan, Mel Kaplan and Larry Kaplan, as individuals who represent the alter ego of the defendant Kabro of East Lyme, LLC. The plaintiffs allege that Kabro of East Lyme LLC is a shell entity without any assets or operations, and that since Kabro does not have a separate corporate existence, the defendants, Steven Kaplan, Mel Kaplan and Larry Kaplan should each be held personally liable for all actions taken through the defendant Kabro of East Lyme LLC.
Count three alleges that the defendant Kabro Associates provided funds to the shell Kabro of East Lyme LLC for deposit and construction survey work. The plaintiffs seek to "pierce the corporate veil," and attach liability upon the defendant, Kabro Associates, as the real actor in the real estate transaction at issue in this case. Count four alleges a violation of CUTPA, General Statutes § 42-110(g) et seq. Count five seeks a return of the one hundred thousand dollar deposit from the escrow agent, Ronald J. Rosenberg, Esq. Lastly, count six alleges the breach of a settlement agreement which was entered by the parties on January 20, 1999. By virtue of this action, the plaintiffs seek money damages, statutory interest pursuant to § 37-3a, attorney's fees pursuant to their agreement, liquidated damages in the sum of one hundred thousand dollars, specific performance of the settlement agreement, attorney's fees and punitive damages pursuant to § 42-110(g) and such other relief as at law and equity require.
On April 29, 1999, the defendants filed a motion to dismiss the plaintiffs' complaint and a memorandum of law in support. On June 1, 1999, the plaintiffs filed an objection to the defendants' motion to dismiss and a memorandum of law in support. The plaintiffs refiled their objection on July 22, 1999, attaching additional documentary evidence supporting their objection. The defendants filed a supplement to their motion to dismiss on August 9, 1999.
 II. DISCUSSION
"It is well established that in ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal CT Page 2457 quotation marks omitted.) Lawrence Brunoli, Inc. v. Branford,247 Conn. 407, 410, 722 A.2d 271 (1999). "The motion to dismiss shall be used to assert . . . lack of jurisdiction over the person. . . ." Practice Book 10-31; Zizka v. Water PollutionControl Authority, 195 Conn. 682, 687, 490 A.2d 509 (1985).
A motion to dismiss "shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record." Practice Book § 10-31(b); Tamm v. Burns, 222 Conn. 280, 282 n. 2, 610 A.2d 590
(1992). "[T]he burden of proof [is] on the defendant as to jurisdictional issues raised [and] is based on the presumption of truth of the matters stated in the officer's return." StandardTallow Corporation v. Jowdy, 190 Conn. 48, 53, 459 A.2d 503
(1983). This burden shifts to the plaintiff, however, when jurisdiction is created by a long-arm statute or constructive service is used. See id., 54; see also Margolis v. Gillam, Superior Court, judicial district of New Haven at New Haven, Docket No. 363504 (February 24, 1995, Martin, J.).
The defendants move this court to dismiss the plaintiffs' complaint on the following grounds: (1) by virtue of insufficient contacts with the forum state, the court lacks jurisdiction over the person of the defendants; and (2) by virtue of insufficient service of process, the court lacks jurisdiction over the foreign limited liability companies. In opposition, the plaintiff's contend that since the defendants have purposely directed activities at residents in the forum state of Connecticut, the Connecticut superior court has specific jurisdiction over the non-resident defendants. The plaintiffs also contend that service of process was sufficient to establish personal jurisdiction over the limited liability company defendants.
 A. Personal Jurisdiction Pursuant to General Statutes § 52-59b
The defendants first claim that the court lacks personal jurisdiction over the defendants because the plaintiffs have not alleged sufficient minimum contacts with the state of Connecticut to authorize such jurisdiction.
"When a defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial court must first decide whether the applicable state long-arm CT Page 2458 statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.)Knipple v. Viking Communications. Ltd., 236 Conn. 602, 606,674 A.2d 426 (1996); Matto v. Dermatopathology Associates of NewYork, 55 Conn. App. 592, 599-600, ___ A.2d ___ (1999). The burden is on the plaintiff to present evidence that will establish jurisdiction pursuant to a long arm statute. See Knipple v.Viking Communications, Ltd., supra, 607; Matto v.Dermatopathology Associates of New York, supra, 600.
 i. Connecticut's Long Arm Statute
Although the plaintiffs do not provide the court with the statutory basis on which they rely for jurisdiction, the only statute apparently applicable is General Statutes § 52-59b. This statute provides, in pertinent part: "[A] court may exercise personal jurisdiction over any nonresident individual, or foreign partnership, . . . who in person or through an agent: (1) Transacts any business within the state. . . ." General Statutes § 52-59b (a)(1). "The General Statutes do not define what the phrase `transacts any business' means in the context of § 52-59b. . . . [W]e construe the term `transacts any business' to embrace a single purposeful business transaction." Zartolasv. Nisenfeld, 184 Conn. 471, 474, 440 A.2d 179 (1981).
In this case, the plaintiffs allege that by virtue of their business negotiations as Kabro Associates LLC and Kabro of East Lyme LLC, as well as the three individual defendants who owned and operated the companies, and the escrow agent who held the deposit, all the defendants should be subject to personal jurisdiction in this court. To determine if the Connecticut long arm statute justifies the exercise of personal jurisdiction in this case, it is necessary to examine the specific allegations as to all defendants.
 a. Kabro Associates LLC
The plaintiffs allege in count three that "[t]he defendant Kabro Associates has provided funds to the shell Kabro of East Lyme LLC for deposit and construction survey work. . . . This commingling of funds pierce the corporate veil allowing liability against the real actor Kabro Assocaites." Complaint, p. 5, ¶¶ 23, CT Page 2459 24. The affidavit submitted by the plaintiffs in support of their objection to the defendants' motion to dismiss states that the plaintiff Torrence "introduced Kabro Associates LLC to TMR Land Planners aka Pat Carraher. They hired him to perform engineering and planning functions for the development of the property. . . . Kabro Associates LLC made payment for services rendered to TMR."
Based upon these allegations, the plaintiffs urge this court to find that the defendant, Kabro Associates LLC, "transacted business" within the state of Connecticut sufficient to justify this court exercising personal jurisdiction over it. This court is not persuaded. The allegations in both the complaint and in the affidavit, without more, fail to establish that Kabro Associates LLC, a corporation allegedly established and operated under the laws of the state of New York, "transacted business" within the state of Connecticut by virtue of the alleged real estate transaction at issue in this case. Moreover, there are no facts alleged or evidence provided to support the assertion that Kabro Associates LLC is the parent corporation of Kabro of East Lyme LLC to support the concept of "piercing the corporate veil. " As such, the defendants' motion to dismiss is granted as to Kabro Associates LLC.
 b. Kabro of East Lyme LLC
The plaintiffs allege in count one of their complaint that Kabro of East Lyme LLC is a limited liability company duly organized and existing under the laws of the state of New York, which was formed for the sole purpose of developing property pursuant to the real estate purchase agreement involving the sale of approximately 305 acres of land in Connecticut. The plaintiffs allegedly entered a real estate purchase and sale agreement with Kabro of East Lyme LLC on or about July 16, 1998. According to the plaintiffs, this transaction occurred in the state of Connecticut, and the defendants do not contest this allegation.
According to the plaintiffs' complaint, the agreement provided for a closing date of August 29, 1998, permitted the buyer to investigate the suitability of the premises to the buyer's needs and allowed the buyer to terminate the contract of sale on or before the closing date. Kabro of East Lyme LLC allegedly made no efforts to schedule the closing and in fact refused to do so upon request by the plaintiffs. On or about August 25, 1998, Kabro of East Lyme LLC provided notice to the plaintiffs of claimed CT Page 2460 defects in title. On or after August 29, 1998, the plaintiffs sent Kabro of East Lyme LLC notice of default for failure to close. The plaintiffs also allege that the parties subsequently agreed to schedule a meeting so as to discuss an extension or agreement for purposes of effectuating the closing. The meeting was had by all parties on September 4, 1998. After various extension agreements were presented and negotiated between the parties, Kabro of East Lyme LLC allegedly indicated to the plaintiffs on September 24, 1998 that it had no intention of closing on the transaction. The plaintiffs allege that Kabro of East Lyme LLC is in breach of the purchase and sale agreement, and urge this court to exercise personal jurisdiction over the entity.
It is well established that "[w]hen the subject of an agreement is real property located in Connecticut, it can be safely assumed the parties have purposefully directed their efforts to Connecticut." Hagar v. Zaidman, 797 F. Sup. 132, 135 (D.Conn. 1992); see also Decsepel v. Cassin, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 117586 (April 15, 1992, Rush, J.) (holding that where the defendants negotiated and signed, in Connecticut, a contract for the purchase of real property located in New York, and the purchase money promissory note was payable in Connecticut, this satisfied the "transacting business" and "minimum contacts" standards); but see R.O.I. Develpoment Corp. v. Weiss, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 391584 (December 21, 1992, Dunn, J.) (holding that where the defendant's only contact with Connecticut was that the contract for the sale of land located in New York was entered into and signed by the parties in Connecticut, the court lacked personal jurisdiction over that defendant).
In the present matter, the plaintiffs allegedly negotiated with Kabro of East Lyme LLC, in efforts to sell land located in Connecticut, which was owned by the plaintiffs. The plaintiffs further allege that after negotiating with the defendant, both parties signed a real estate purchase and sale agreement, and that this transaction occurred in Connecticut. As previously stated, the defendants do not challenge this allegation. When the closing date as set forth in the purchase and sale agreement was not adhered to, the parties further negotiated in order to set a final date for completing the transaction. Despite retaining its New York identity, this court finds that the defendant, Kabro of East Lyme LLC, has extended itself to this CT Page 2461 state for the purposes of acquiring property in Connecticut. The plaintiff has alleged facts which sufficiently indicate that the defendant Kabro of East Lyme LLC has "transacted business" in Connecticut, so as to justify the exercise of specific personal jurisdiction over it with regard to the real estate transaction at issue. Accordingly, the defendants' motion to dismiss as to Kabro of East Lyme LLC is denied.
 c. Steven Kaplan, Mel Kaplan and Larry Kaplan
The plaintiffs allege that this court should determine that it has personal jurisdiction over the three individual defendants based upon the theory of "piercing the corporate veil." The plaintiffs allege that although most of their dealings and negotiating was with these individuals, it was behind the mask of Kabro of East Lyme LLC. As such, the plaintiffs urge this court to "pierce the corporate veil," as it is in the interests of justice to do so.
"`Courts will disregard the fiction of a separate legal entity when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock. . . . Under such circumstances the general rule, which recognizes the individuality of corporate entities and the independent character of each in respect to their corporate transactions, and the obligations incurred by each in the course of such transactions, will be disregarded, where, as here, the interests of justice and righteous dealing so demand. . . . The circumstances that control is exercised merely through dominating stock ownership, of course, is not enough. . . . There must be such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal.'" Davenport v. Quinn, 53 Conn. App. 282, 299-300,730 A.2d 1184 (1999), quoting Zaist v. Olson, 154 Conn. 563, 573-74,227 A.2d 552 (1967).
"When determining whether piercing the corporate veil is proper, our Supreme Court has endorsed two tests: the instrumentality test and the identity test. The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transactionattacked so that at the corporate entity as to this transaction CT Page 2462 had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. . . ." (Emphasis in original; internal quotation marks omitted.) Davenport v. Quinn, supra, 53 Conn. App. 300.
"`The identity rule has been stated as follows: If a plaintiff can show that there was such a unity of interest and ownership that the independence of the corporation had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.' . . . The concept of piercing the corporate veil is equitable in nature and courts should pierce the corporate veil only under `exceptional circumstances.'" Id., 300-01, quotingAngelo Tomasso, Inc. v. Armor Construction Paving, Inc.,187 Conn. 544, 553-54, 557, 447 A.2d 406 (1982).
In the present case, the plaintiffs have failed to allege facts sufficient to justify this court "piercing the corporate veil," and exercising personal jurisdiction over either Mel Kaplan or Larry Kaplan. As to these two defendants, the plaintiff has merely alleged that they were involved in the day to day operations of Kabro of East Lyme LLC, and were "the alter ego of the limited liability company, and who are in fact the driving force" behind said company. No other facts are alleged to show either individuals' personal involvement in the real estate transaction at issue. "Neither has [allegedly] ever personally transacted any business within the State of Connecticut; neither has ever regularly done or solicited business, or engaged in any persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered in the State of Connecticut; neither has at any time derived substantial revenue from interstate or international commerce; neither has at any time personally owned, used or possessed any real property situated within the State of Connecticut; in fact, neither [of these two defendants] has [allegedly] sent one letter or has made one telephone call out of which the alleged injuries could have resulted." Margolis v. Gillam, supra, Superior Court, Docket No. 363504. CT Page 2463
Moreover, the only mention of these two defendants in the plaintiffs' supporting affidavit is in relation to the statement that Steven Kaplan often mentioned that he needed to discuss things with Mel Kaplan and Larry Kaplan prior to making any decisions. This court finds that there insufficient contacts alleged by the plaintiffs to justify the exercise of personal jurisdiction over these two defendants, or to justify "piercing the corporate veil" of the defendant Kabro of East Lyme LLC. As such, the defendants' motion to dismiss is granted as to both the defendants Mel Kaplan and Larry Kaplan.
This, court finds, however, that it may exercise personal jurisdiction over the defendant Steven Kaplan. The plaintiff Torrence states in his supporting affidavit that he met with the defendant Steven Kaplan on numerous occasions, and was thoroughly involved with the negotiations of the contract and with the subsequent events involving the investigation of the property for development by Kabro of East Lyme LLC. This plaintiff alleges that he discussed the transaction at issue with Steven Kaplan, who the plaintiff identifies as "a member of Kabro of East Lyme LLC." The affidavit further alleges that this plaintiff "introduced Steven Kaplan to the Town of East Lyme officials and attended several meetings with Steven Kaplan and the Building Department . . . I introduced Steven Kaplan and Kabro of East Lyme LLC to Attorney Theodore Harris. The Kaplans requested Attorney Harris to handle legal matters with respect to the development of the property and any potential development/zoning issues. . . . I introduced Steven Kaplan, Kabro of East Lyme LLC and Kabro Associates LLC to TMR Land Planners aka Pat Carraher. They hired him to perform engineering and planning functions for the development of the property. . . . On several occasions Steven Kaplan said that he was without authority to made decisions and needed to speak with Mel and Larry Kaplan about major issues. Therefore, my understanding was that they were all working together with respect to this matter." Affidavit of the plaintiff Torrence, p. 2-3.
Although Mr. Kaplan is a domicile of New York, this court finds that he has "transacted business" in this state, such that the long arm statute of this state can reach him for the purposes of specific personal jurisdiction. The plaintiffs have alleged facts which demonstrate that the defendant Steven Kaplan was instrumental in the real estate transaction at issue. The defendants have not submitted any facts or evidence contradicting CT Page 2464 the plaintiffs' allegations in this regard. As such, the defendants' motion to dismiss is denied as to Steven Kaplan.
 d. Richard Rosenberg, Esq.
As merely the escrow agent for the parties, holding the one hundred thousand dollar deposit in New York, this defendant has not "transacted business" sufficient to justify the exercise of personal jurisdiction by this court over him. The plaintiffs' complaint and supporting affidavit merely allege that "Attorney Ronald Rosenberg is a New York lawyer. He agreed to and did act as Escrow Agent for deposit funds required by the contract for purchase and sale." Affidavit of Torrence, p. 3. The deposit was allegedly held in by this defendant in the state of New York. This court finds that as merely the escrow agent, this defendant did not "transact business" within the meaning of § 52-59b. As such, the defendants' motion to dismiss is granted as to the defendant Richard Rosenberg, Esq.
 ii. Constitutional Limitations
The plaintiffs must next show that despite having "transacted business" in the forum state, this court's exercise of jurisdiction over the remaining defendants, Kabro of East Lyme LLC and Steven Kaplan, would not offend due process. The court must consider whether the facts satisfy the minimum contacts requirement of the due process clause; that is "the defendant's contacts with the forum state must be such that maintenance of the suit `does not offend traditional notions of fair play and substantial justice.'" (Internal quotation marks omitted.)World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 292,100 S.Ct. 559, 62 L.Ed.2d 490 (1980), quoting InternationalShoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154,90 L.Ed.2d 95 (1945).
The defendants contend that this court's exercise of jurisdiction under § 52-59b would offend principles of due process. "The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness. `[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there.' World-Wide Volkswagen Corporation v. Woodson,444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). . . . At the same time, jurisdiction may not be asserted `in such a way as CT Page 2465 to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent.' (Internal quotation marks omitted.) Burger KingCorporation v. Rudzewicz, 471 U.S. 462, 478, 105 S.Ct. 2174,85 L.Ed.2d 528 (1985). The specific facts of each case necessarily determine the outcome of a minimum contacts analysis. See Kulkov. California Superior Court, 436 U.S. 84, 92, 98 S.Ct. 1690,56 L.Ed.2d 132, reh. denied, 438 U.S. 908, 98 S.Ct. 3127,57 L.Ed.2d 1150 (1978)." United States Trust Co. v. Bohart,197 Conn. 34, 41-42, 495 A.2d 1034 (1985).
This court finds that it would not offend "traditional notions of fair play and substantial justice" to exercise personal jurisdiction over either Kabro of East Lyme LLC or Steven Kaplan. According to the allegations in the plaintiffs' complaint, both these defendants, were instrumentally involved with the negotiations involving the real estate purchase and sale agreement entered into by the parties, and well aware that the property they were contracting to purchase was located in Connecticut. In fact, it is uncontested that the purchase and sale agreement entered by the parties for the purchase of land located in East Lyme, Connecticut was negotiated and signed in Connecticut. This court finds that its exercise of personal jurisdiction over the defendants Steven Kaplan and Kabro of East Lyme LLC does not offend constitutional protections and is permitted by the Connecticut long arm statute, § 52-59b, since the plaintiffs have alleged that both these defendants have sufficient minimum contacts with the state of Connecticut.
 B. Jurisdiction Over Non Resident Partnerships
The defendants next argue that this court should dismiss the plaintiffs' complaint as it pertains to the defendant Kabro of East Lyme, Inc. LLC because allegedly this foreign partnership was served improperly. General Statutes § 34-225
provides, in pertinent part: "(a) Any process, notice or demand in connection with any action or proceeding required or permitted by law to be served upon a foreign limited liability company authorized to transact business in this state which is subject to the provisions of section 34-224, may be served upon the foreign limited liability company's statutory agent for service by any proper officer or other person lawfully empowered to make service." General Statutes § 34-225 (a). Section (b) enumerates the procedure for when service of process may be made upon a foreign limited liability company when that company has appointed CT Page 2466 the Secretary of State of Connecticut as their agent for service of process. This section explicitly states: "If it appears from the records of the Secretary of the State that such a foreign limited liability company has failed to appoint or maintain a statutory agent for service, or if it appears by affidavit attached to the process, notice or demand of the officer or other proper person directed to serve any process, notice or demand upon such a foreign limited liability company's statutory agent for service appearing on the records of the Secretary of the State that such person cannot, with reasonable diligence, be found, service of such process, notice or demand on such foreign limited liability company may, when timely made, be made . . . by: (1) Leaving a true and attested copy . . . with . . . the Secretary of the State, and (2) depositing in the United States mails, by registered or certified mail, postage prepaid, a true and attested copy thereof, together with a statement by such officer that service is being made pursuant to this section, addressed to such foreign limited liability company at the address of the office designated in the articles of organization in the state of formation as shown on the records of such state." General Statutes § 34-225 (b).
In this case, however, it appears that the limited liability company was not registered with the Connecticut Secretary of State. Thus, § 34-233 provides the applicable statutory guidance. Section § 34-233 provides, in relevant part: "A foreign limited liability company, by transacting business in this state without a certificate of registration, appoints the Secretary of State as its agent for service of process with respect to a cause of action arising out of the transaction of business in this state." General Statutes § 34-233 (c).
In the present matter, the defendants contend that insufficient service of process was made on Kabro of East Lyme LLC, since the plaintiffs only served the secretary of the foreign partnership and did not serve the Secretary of State for the state of Connecticut, in violation of § 34-225. In opposition, the plaintiffs contend that § 34-225 is only operative when the foreign partnership has registered to do business within Connecticut. The plaintiffs allege that since this defendant was not registered with the Secretary of State for Connecticut, the Secretary of State would not accept service of process on behalf of Kabro of East Lyme LLC when the plaintiff attempted to serve him. In order to effect service of process on the defendant, the plaintiff served the secretaries of the limited liability CT Page 2467 companies, and urges this court to find that this was proper.
Although the plaintiff does not raise this fact to the court, the sheriff's amended return indicates that on May 27, 1999 he served process on the defendant Kabro of East Lyme LLC by leaving a verified true and attested copy of the original writ, summons and complaint at the office of the Secretary of State for the state of Connecticut. According to the return, although the Secretary of State for the State of Connecticut had previously refused to accept service of process for an unregistered foreign limited liability company, they agreed to accept service on behalf of the defendant on May 27, 1999.
Since it appears from the face of the Sheriff's Amended return that the plaintiffs did, in fact, serve the Secretary of State, and since further there is no allegation by the defendants that this service of process was untimely, this court will deny the defendants' motion to dismiss on the grounds of insufficient service of process.
 III. CONCLUSION
For the foregoing reasons, the defendants' motion to dismiss is denied as to the defendants Kabro of East Lyme LLC and Steven Kaplan, and granted as to all other defendants.
Martin, J.