[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Brookridge Funding Corporation, a Delaware corporation with a principal office located at 26 Mill Plain Road, Danbury, Connecticut (Brookridge), has filed a four count complaint against the District of Columbia Housing Authority (DCHA). Brookridge alleges that on or about September 22, 1998, Paul M. Haddad, doing business as APH Wrecking (Haddad), sold and delivered to DCHA demolition services at a cost of forty-seven thousand ($47,000) dollars. On January 21, 1999, Brookridge purchased Haddad's invoice issued to DCHA, and all rights of payment. Brookridge also alleges that on January 20, 1999, to induce Brookridge to purchase the invoice, DCHA executed a "Notice of Purchase of Accounts Receivable" in which DCHA acknowledged: "(1) that it received notice of the assignment to Brookridge of Haddad's accounts receivable, including the invoice; (2) that as of that date the sum of $10,575 was due absolutely from the defendant with respect to the invoice without any right of deduction or offset of any kind, and (3) that such sum was to be paid directly to Brookridge."[1] Brookridge further alleges that in executing the acknowledgment, DCHA agreed to submit to the jurisdiction of the state of Connecticut and the federal courts residing in Connecticut in any action brought by Brookridge. Brookridge continues stating in count one that it relied to its detriment upon the executed acknowledgment when deciding to purchase the invoice from Haddad. It is undisputed that DCHA failed and refuses to pay the balance of ten thousand five hundred seventy-five ($10,575) dollars. CT Page 10844
Counts two through four essentially mirror count one, with the following changes. Count two alleges that on or about September 22, 1998, Haddad agreed to sell, and that DCHA agreed to pay for, demolition services at a cost of forty thousand ($40,000) dollars. Count three alleges that on or about January 20, 1999, DCHA acknowledged that a balance of eighteen thousand ($18,000) dollars was due to Haddad for the services rendered. Count four includes the additional illegation that DCHA benefitted [benefited] from the services, and, because of its failure to pay, was unjustly enriched. DCHA now moves to dismiss the complaint, pursuant to § 10-30 of the Practice Book, asserting that the ground that the court lacks personal jurisdiction over it.
Section 10-31 of the Practice Book recites, inter alia, that a motion to dismiss shall be used to assert lack of jurisdiction over the person. "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader . . . (Citations omitted; internal quotation marks omitted.) Cumberland Farms, Inc. v. Groton, 247 Conn. 196,214 n. 15 (1998). "Where... as here, the motion [to dismiss] is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." Shay v. Rossi, 253 Conn. 134, 140 (2000).
It is undisputed that DCHA executed an acknowledgment containing a forum selection clause purporting to subject the parties of the transaction to the jurisdiction of Connecticut federal and state courts. DCHA, however, argues that the notice of purchase of accounts receivable is not a valid, binding contract. DCHA also contends that the Connecticut long arm statute does not extend jurisdiction over it. Finally, DCHA maintains that assuming, arguendo, that the long arm statute does extend jurisdiction over it, constitutional principles of due process would be violated. The court will address these arguments seriatim.
In Total Telecommunications, Inc. v. Target Telecommunications, Inc.,
Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 053516 (March 11, 1997, Corradino, J.), the court adopted a two-step analysis to determine whether to enforce a forum selection clause. See also IDV North America, Inc. v. Siranno, Superior Court, judicial district of Hartford at Hartford, Docket No. 058059 (September 9, 1999,Teller, J.). These steps are: first, the court must analyze the contract formation itself and determine if there was fraud, deception or uneven bargaining power. Second, the court must determine whether the inconvenience resulting to the party bringing suit-would be so great if CT Page 10845 it had to go to another forum to prosecute its action, that the court should not enforce an otherwise valid contractual provision.
DCHA argues that although the Total Telecommunications court focused its analysis on fraud, deception or uneven bargaining power in determining whether a contract is enforceable, if an agreement is invalid and non-binding due to defective formation, the result should be the same.[2] Phoenix Leasing, Inc. v. Kosinski, 47 Conn. App. 650, 653
(1998) ("[P]arties often consent to resolve disputes in a particular jurisdiction by incorporating forum selection clauses into theircontracts. Connecticut case law is clear that the courts will uphold an agreement of the parties to submit to the particular jurisdiction of a particular tribunal."). (Emphasis added.)
DCHA contends that the alleged agreement is unenforceable under the preexisting duty rule. "To be enforceable, a contract must be supported by valuable consideration.... The doctrine of consideration is fundamental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable." (Citations omitted; internal quotation marks omitted.) Connecticut National Bank v.Voog, 233 Conn. 352, 366 (1995). "A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do." (Internal quotation marks omitted.) New EnglandRock Services, Inc. v. Empire Paving, Inc., 53 Conn. App. 771, 776, cert. denied, 250 Conn. 921 (1999). DCHA maintains that "[t]he notice of purchase of accounts receivable only requires the payment of the accounts receivable, a promise the defendant is already bound to perform absent a defense."[3]
Brookridge points to no new consideration in exchange for the forum selection clause, but rather argues that the recital of consideration is prima facie evidence of consideration. In support of this argument, Brookridge cites Raymond v. Sellick, 10 Conn. 480, 483 (1835), where the court states that "[i]n the case of bills of exchange and promissory notes, the expression for value received, raises a presumption of a legal consideration; but it is a presumption liable to be rebutted, by proof." (Emphasis in original.) See also TIE Communications, Inc. v. Kopp,218 Conn. 281, 292 (1991) ("[A recitation of consideration received] is simply prima facie evidence, shifting the burden of proof to the party disputing the consideration."), citing, inter alia, Raymond v. Sellick,
supra, Brookridge argues that for the purposes of the motion to dismiss the defendant is without the opportunity to rebut such prima facie evidence. This argument is flawed. It is well established that a motion to dismiss admits all facts well pleaded, as well as undisputed facts existing on the record. See Barde v. Board of Trustees, supra, CT Page 10846207 Conn. 59, 62. Moreover, in deciding a motion to dismiss for lack of in personam jurisdiction, it is the court's function to resolve the determinative question of whether there is an enforceable forum selection clause. Accordingly, the court will now turn to the terms of the forum selection clause and determine whether it is enforceable.
An examination of the notice of purchase of funds receivable, identical copies of which have been furnished to the court by each party, reveals no language of consideration. DCHA had a preexisting duty to pay, barring some defense. There exists no allegation in the complaint that DCHA received any consideration for agreeing to the forum selection clause, such as a forbearance or an extension.[4] The court finds that DCHA's agreement to this clause was merely a gratuity, as there was no consideration for it. Ergo, the forum selection clause is not enforceable, unless the court deems DCHA to have consented to in personam jurisdiction by promissory estoppel.
Brookridge argues that the court should invoke its equitable powers and conclude that DCHA is precluded from evading the forum selection clause by promissory estoppel. "Under the law of contract, a promise is generally not enforceable unless it is supported by consideration. . . . This court has recognized, however, the development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor. . . . Section 90 of the Restatement Second states that under the doctrine of promissory estoppel [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." (Citations omitted; internal quotation marks omitted.)D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 213 (1987); see also Lawrence Brunoli, Inc. v. Branford,247 Conn. 407, 420 (1999), quoting D'Ulisse-Cupo.
"When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 56
(1983). On the record before the court, it is unclear whether DCHA could reasonably have expected that by signing the notice of purchase of accounts receivable it would induce Brookridge to provide financial services to Haddad; whether Brookridge relied on the notice when it did so; or whether it would be unjust if the court did not hold DCHA to the terms of the notice.
For example, the notice of purchase of accounts receivable is CT Page 10847 contradictory by its terms. The title and the first sentence of the notice, which reads "[n]otice is hereby provided to you that Brookridge Funding Corporation ("BFC") has purchased the accounts receivable of APH Wrecking Co.," would indicate that Brookridge already owned the receivables in question, and thus, DCHA could not induce Brookridge to purchase them because Brookridge already had done so. (Emphasis added.) The second paragraph, however, provides that DCHA made recorded representations "[t]o induce BFC to provide financial services to assignor," which would imply that Brookridge had not already purchased the accounts receivable. Another open question is the extent to which Brookridge relied on the notice, and the forum selection clause in particular, when it purchased the receivables.
DCHA will be deemed to have consented to jurisdiction of the Connecticut courts as per the terms of the notice if DCHA reasonably should have known that it would induce Brookridge's reliance by signing the notice, if Brookridge relied on the notice in purchasing the receivables, and if injustice can be avoided only by holding DCHA to the terms of the notice. See D'Ulisse-Cupo, supra. A hearing is necessary to make this determination because promissory estoppel is the only available basis to establish in personam jurisdiction over DCHA.
A hearing would not be necessary if the Connecticut long arm statute provided for jurisdiction over DCHA, See Knipple v. VikingCommunications. Ltd., 236 Conn. 602, 606 (1996). DCHA argues that the relevant long arm statute, General Statutes § 33-929 (f) of the General Statutes,[5] does not authorize the assertion of jurisdiction over it, and that the exercise of jurisdiction would violate constitutional principal of due process. In support of these arguments DCHA filed the affidavit of Lydia Hill, the custodian of its records. Brookridge does not contest the defendant's argument regarding the long arm statute, nor does Brookridge's affiant assert anything to that effect.
Connecticut's long arm statute confers jurisdiction where the cause of action arises out of a contract made or to be performed in this state. See § 33-929 (f)(1) of the General Statutes. As to the underlying contract between DCHA and Haddad, Brookridge does not allege that it was made or that performance was to be made in Connecticut. DCHA's affiant, Lydia Hill, avers that the underlying contract was not made in Connecticut or intended to be performed here, and her affidavit is uncontested. As to the notice of purchase of accounts receivable, the notice is not a contract, and thus does not lead to jurisdiction here for having been formulated, in part, in Connecticut. Furthermore, the fact that agreement required that payment be delivered to Connecticut is, by itself, insufficient to confer to the court in personam jurisdiction over CT Page 10848 DCHA. See Coan v. Bell Atlantic Systems Leasing International, Inc.,813 F. Sup. 929, 944 (D. Conn. 1990); see also Wellner v. Kasarjian,
Superior Court, judicial district of Hartford at Hartford, Docket No. 562940 (April 6, 1999, Peck, J.), citing Coan. Again, Brookridge does not argue this point. The court finds, for the purposes of the motion to dismiss, that § 33-929 (f)(1) does not convey jurisdiction over DCHA.
Section § 33-929 (f) of the General Statutes also permits suit in Connecticut where the cause of action arises out of business solicited by DCHA in this state, or where DCHA has repeatedly so solicited business" in this state. There is no allegation to this effect, and DCHA's affiant disavows any such conduct. To reiterate, her affidavit is uncontested. Therefore the court finds, for the purposes of the present motion, that § 33-929 (f)(2) does not provide jurisdiction over DCHA.
The third alternative for establishing jurisdiction pursuant to the long arm statute, requiring the "production, manufacture, or distribution of goods . . . to be used or consumed in this state," similarly does not provide the court with jurisdiction over DCHA. General Statutes § 33-929
(f)(3). No allegation exists to that effect, DCHA's affiant disavows any such conduct on the part of DCHA, and Brookridge does not contest her testimony.
Finally, "tortious conduct in this state;" § 33-929 (f)(4); is not pleaded, and DCHA's affiant again disavows any connection with Connecticut, including, presumably tortious conduct. Her affidavit is uncontested in any sense of the word. Therefore, the court agrees with DCHA that the long arm statute does not establish a basis for in personam jurisdiction over it in this action.
DCHA, in addition, also argues that even assuming, arguendo, that the long arm statute establishes jurisdiction over it, the exercise of jurisdiction over it would violate constitutional principles of due process. Brookridge does not contest this argument either, and as the court has found that the long arm statute does not confer jurisdiction, a ruling on this issue is unnecessary. See Knipple v. VikingCommunications. Ltd., supra.
Because the court finds that the forum selection clause is unenforceable for lack of consideration, and that the relevant long arm statute does not permit it to find jurisdiction over DCHA, the only remaining basis for this court to assert in personam jurisdiction over DCHA is Brookridge's reliance on promissory estoppel. Due process requires this court to hold an evidentiary hearing to determine whether the doctrine of promissory estoppel requires that the court deem DCHA to CT Page 10849 have consented to jurisdiction in this court. See Standard Tallow Corp.v. Jowdy, supra, until such a hearing is held and unless that hearing establishes such promissory estoppel, the motion to dismiss is, accordingly, granted.
Moraghan, J.